IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>$33,500.00 in U.S. CURRENCY,<br>Defendant. | Civil Action No. 1:19-cv-1118 |

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate violation of the Controlled Substances Act.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or was derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically

the exchange of a controlled substance in violation of state or federal law.

3. The defendant property is $33,500.00 in U.S. Currency, which was seized on April 13, 2019, in Thomasville, North Carolina, while located within the jurisdiction of this Court, and has been deposited to the U.S. Customs and Border Protection Customs Suspense Account.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in Exhibit A, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States

of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 6th day of November, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney

/s/ Steven N. Baker
Steven N. Baker
Assistant United States Attorney
NCSB #36607
101 S. Edgeworth Street, 4th Floor
Greensboro, NC 27401
Phone: (336)333-5351
Email: steve.baker3@usdoj.gov

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

_____
Cory E. Brant
Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

# DECLARATION

I, Cory E. Brant, having been duly sworn, do hereby depose and state:

1. I am a Special Agent of the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed for over 17 years. I am assigned to the Office of the Resident Agent in Charge, Winston-Salem, North Carolina, where I have been involved in the prosecution and investigation of numerous violations of Titles 8, 18, 19, 21 and 31 of the United States Code (U.S.C.). Prior to reporting for assignment, I attended training at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia, where I received instruction in Federal criminal statutes, search, seizure and arrest authority, and many other facets of federal law enforcement.

2. This Declaration is made in support of a Verified Complaint of Forfeiture of $33,500.00 in U.S. Currency seized from Charly MUMBERE in Thomasville, North Carolina, on April 13, 2019.

3. The facts and circumstances set forth in this declaration are based upon my personal knowledge of the investigation as well as information provided to me by other law enforcement officers involved in this investigation.

4. In January 2019, HSI and the Thomasville Police Department (TPD) initiated an investigation into the distribution of multi-kilogram quantities of methamphetamine in and around the Middle District of North Carolina, involving Carlos Sanchez Galarza and others.



GOVERNMENT EXHIBIT
A

5. On January 9, 2019, HSI Task Force Officers (TFOs) and Detectives from TPD's Special Operations Division, Asheboro Police Department's (APD) Vice/Narcotics Division, and Lexington Police Department's (LPD) Vice/Narcotics Division, conducted an undercover purchase of methamphetamine from Galarza's residence, located at 405 Martin Luther King Drive, Thomasville, North Carolina. The substance purchased weighed approximately 3.17 ounces (90 grams) and field-tested positive for methamphetamine. A subsequent lab test revealed the presence of methamphetamine hydrochloride with an average purity of $96.4 \pm 2.1\%$.

6. On January 17, 2019, HSI TFOs and Detectives from TPD's Special Operations Division, APD's Vice/Narcotics Division, and LPD's Vice/Narcotics Division, conducted an undercover purchase of methamphetamine from Galarza's residence, located at 405 Martin Luther King Drive, Thomasville, North Carolina. The substance purchased weighed approximately 1.08 pounds (491 ounces) and field-tested positive for methamphetamine. A subsequent lab test revealed the presence of methamphetamine hydrochloride with an average purity of $101 \pm 2.1\%$.

7. On February 2, 2019, HSI TFOs and Detectives with TPD conducted an undercover purchase of methamphetamine from Galarza's residence, located at 405 Martin Luther King Drive, Thomasville, North Carolina. The substance purchased weighed approximately 1.012 kilograms (1012 grams) and field-tested positive for methamphetamine. A subsequent lab test revealed the presence of methamphetamine hydrochloride with an average purity of $97.6 \pm 2.1\%$.

8. On April 12, 2019, HSI TFO/TPD Det. Adam Kallfelz obtained three arrest warrants for Galarza, charging him under North Carolina law with three counts of Trafficking Methamphetamine, a violation of General Statue 90-95(H)(3B).

9. On the evening of April 12, 2019, your declarant, HSI TFOs and Detectives from TPD's Special Operations Division, APD's Vice/Narcotics Division, and LPD's Vice/Narcotics Division, with assistance from the Davidson County and Randolph County Sheriff's Offices, conducted a law enforcement operation in Lexington, North Carolina, in which Galarza was set to deliver approximately three (3) kilograms of methamphetamine to an undercover officer. When officers arrived at the location of the operation, they observed Galarza and three Hispanic males run into the nearby woods, eluding arrest. Investigators searched the area, including a 2015 Chrysler 300 with a Virginia registration plate. The vehicle was registered to Marco Hernandez Gonzalez, a resident of Danville, Virginia. Investigators located and seized approximately three kilograms of methamphetamine from the scene. A subsequent investigation revealed that the 2015 Chrysler 300 was associated with an ongoing investigation targeting a drug trafficking organization operating in and around the Danville, Virginia, area.

10. On April 13, 2019, the day after Galarza was able to evade arrest, TPD officers were monitoring Galarza's residence at 405 Martin Luther King Drive, Thomasville, North Carolina. At approximately 4:32 p.m., they observed a black Infiniti sedan, bearing Virginia registration UYP-5829, at Galarza's residence. The windows of the Infiniti were heavily tinted, and officers were only able to determine that a male was in the driver's seat. They

3

Case 1:19-cv-01118 Document 1-1 Filed 11/06/19 Page 3 of 8

were unable to determine whether that male was Galarza, or whether there were any other passengers in the vehicle. Given the presence of the Infiniti at Galarza's residence, the Virginia registration plate, and the connection to Virginia observed the previous evening, Detective Kallfelz advised patrol units that he believed Galarza was meeting with the occupant of the Infiniti to conduct the business of narcotics trafficking and that patrol units should attempt to stop the vehicle and identify the occupants of the vehicle. Detective Kallfelz also advised patrol units that there was a high probability that Galarza could be in the vehicle and that Galarza had outstanding arrest warrants for drug trafficking.

11. Shortly afterward, TPD Officer J. Rowe, with assistance from Sergeant C. Leonard, initiated a traffic stop of the Infiniti on National Highway near the US 29/70 overpass. After activating their emergency lights, the driver of the Infiniti turned right and attempted to travel the wrong way (northeast) onto the US 29/70 southbound off ramp to National Highway. TPD Officer J. Rowe believed the vehicle was going to attempt to elude officers but traffic forced it to stop.

12. Officers identified the driver of the Infiniti as Charly MUMBERE of Portsmouth, Virginia. Galarza was not in the vehicle.

13. Given the previously stated facts (the presence of the Infiniti at Galarza's residence and the connection of subjects and vehicles to Virginia), Sergeant Leonard requested that TPD Officer Tolson deploy his certified police canine to conduct a free air sniff around the vehicle. Officer Tolson immediately did so and advised that his canine alerted to the presence of the odor of narcotics emitting from the vehicle.

14. Sergeant Leonard asked MUMBERE if there were any illegal narcotics in the vehicle. MUMBERE stated, "No." Sergeant Leonard then asked MUMBERE if he had any large amounts of currency in the vehicle. MUMBERE replied, "Yes, around $5,000." Sergeant Leonard explained to MUMBERE that the location from which he just left was under investigation for drug trafficking and that he believed MUMBERE was there to purchase narcotics. MUMBERE denied this and said he had come from Portsmouth, Virginia, and was trying to get to Charlotte, North Carolina, and just "ended up at the house" in question. The residence in question, 405 Martin Luther King Drive, is off any viable path between Portsmouth, Virginia and Charlotte, North Carolina. In addition, the residence is in a seldom traveled part of Martin Luther King Drive. MUMBERE further stated that he knew a person could only legally travel with $9,999.00.

15. Sergeant Leonard ran MUMBERE's license and registration and found MUMBERE's license to be suspended for a prior DWI conviction.

16. Sergeant Leonard conducted a search of the vehicle and observed a cell phone in plain view with GPS coordinates to a Sheetz gas station on National Highway as the arrival destination, which was approximately one-quarter of a mile north from the traffic stop location. Sergeant Leonard suspected that Galarza changed the meeting location from 405 Martin Luther King Drive to the gas station. Since MUMBERE stated he had currency in the car and was traveling from the target residence to the Sheetz in a direct path, Sergeant Leonard believed MUMBERE may be headed to purchase narcotics from Galarza at the

5

Sheetz gas station. Sergeant Leonard sent officers to the Sheetz, but they were unsuccessful in locating Galarza.

17. While Sergeant Leonard conducted his search of the vehicle, MUMBERE received a phone call from a local (Winston-Salem, NC) phone number. MUMBERE had no luggage in the vehicle, indicating a short turn-around trip. Sergeant Leonard located a black backpack sitting on the rear seat, which held a blue grocery bag inside containing five bundles of U.S. currency. The bundles were banded and the currency appeared to be well more than the $5,000.00 MUMBERE had previously stated was in his possession. Sergeant Leonard then observed a large amount of powder detergent spread under the back seat of the vehicle. Narcotics traffickers are known to use detergents to mask the scent of narcotics. An open bottle of Cognac was also located directly behind the driver's seat, well within reach of the driver. Based on the suspended license and the open container of alcohol in the vehicle, MUMBERE was arrested. The currency, backpack, and cell phone were seized as evidence and turned over to the TPD Special Operations Division.

18. Once at the police department, Sergeant Leonard and Detective Kallfelz conducted a count of the currency, which totaled $33,500.00. The current going rate/cost for one kilogram of cocaine or approximately three kilograms of methamphetamine is $33,500.00.

19. Detective Kallfelz conducted an interview with MUMBERE, who waived his *Miranda* rights (both verbally and by signing a waiver). MUMBERE told investigators he was traveling to Charlotte from Virginia and that he was in possession of $5,000.00 to

6

purchase an engagement ring for his girlfriend. Detective Kallfelz advised that $33,500.00 had been located in the backpack found in MUMBERE's vehicle and MUMBERE still advised that he only had $5,000.00. MUMBERE then said that he just wanted his $5,000.00, and that law enforcement could "keep the rest." Detective Kallfelz then asked for consent to search MUMBERE's cell phone, which MUMBERE denied.

20. HSI adopted the seizure of the $33,500.00 in U.S. Currency. On April 15, 2019, the currency was converted to a cashier's check made payable to U.S. Customs and Border Protection (CBP).

21. CBP initiated administrative forfeiture of the $33,500.00 and sent notice to MUMBERE on June 10, 2019. On July 15, 2019, CBP received a claim to the currency from MUMBERE. In his claim, MUMBERE stated the currency was his "down payment to a house [he] planned to buy for [his] mother" and that he had "borrowed and sacrificed to be in debt just to make [his] mother happy."

7

## CONCLUSION

22.     Based on the foregoing, there is probable cause to believe that $33,500.00 in U.S. Currency seized from Charly MUMBERE on April 13, 2019, was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to the exchange of a controlled substance, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

This the 6th day of November, 2019.

　　　　　　　　　　　　　　　　　　　　　　／s／ Cory E. Brant
　　　　　　　　　　　　　　　　　　　　　　Cory E. Brant
　　　　　　　　　　　　　　　　　　　　　　Special Agent
　　　　　　　　　　　　　　　　　　　　　　U.S. Immigration and Customs Enforcement
　　　　　　　　　　　　　　　　　　　　　　Homeland Security Investigations

8